CHRISTOPHER ADAMS and WILLIAM WEST FRAZIER, for the use of the
    United States of America, v. WILLIAM HAMILTON AVERY.

Where a note, taken in the ordinary course of business, before maturity, for full value,
    and without notice of any equities, is sold at a sheriff's sale, under a *fi. fa.* against
    the holder, the purchaser will acquire all his right, title and interest; and this, though
    public notice may have been given at the time of the sale, of equities existing be-
    tween the original parties to the sale. Such a notice cannot prevent the purchaser
    from being subrogated to all the rights of the defendant in execution, nor vary those
    rights in the slightest degree. C. C. 2598, 2616.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
*Peyton* and *I. W. Smith*, for the plaintiffs.
*Lockett* and *Micou*, for the appellants.
MORPHY, J. This action is brought on a note for $6700, drawn
by the defendant to the order of, and endorsed by John G. Banks,
dated the 4th of May, 1839, and payable on the 13th of January,
1844. This note was bought by the plaintiffs, as the agents of
the United States, at a sheriff's sale of the assets of the United
States Bank of Pennsylvania, before its maturity. The defen-
dant admits that the note sued on was given by him to John
G. Banks, in part payment of a plantation and slaves in the pa-
rish of Iberville, but denies being bound for the same, because
the said Banks was and is indebted to him in a sum far exceed-
ing the amount of it, for money advanced to him on account of
the price of said plantation, and because he has been disturbed
and disquieted in the possession of the property for which the
note was given, by two suits, one by which John Allain and Ce-
lestine Roth have asserted title to a great portion of the land,
and have taken possession thereof, and the other in which the
widow of Charles De Armas, through whom defendant's title is
derived, seeks to rescind a renunciation she has made of her
rights on the property, and to reinstate her legal mortgage on
the same. The defendant avers that the plaintiffs had full no-
tice of these defences before they became owners of said note,
and are as fully and effectually held, or bound thereby, as if
they were the original payees and vendors of the property. In
a supplemental answer, the defendant avers that since the issue

was joined, the title of the plaintiffs, if ever they had any, has been lost, as they claim under a sheriff's sale in the suit of *The United States* v. *The United States Bank of Pennsylvania*, in which judgment was entered up by consent, based upon another certain judgment rendered in the Circuit Court of the United States for the Eastern District of Pennsylvania, which latter judgment has been annulled by the Supreme Court of the United States. There was a judgment below in favor of the petitioners, from which the defendant has appealed.

The evidence shows that, on the 26th of June, 1840, the note sued on was discounted by the Bank of the United States chartered by the State of Pennsylvania, through its agency here, and the full value of it paid to the holders, Willcox, Anderson & Co., to whom John G. Banks had, for value received, previously endorsed it, and that at the time of discounting the note, the bank received it without any notice of any equities between the original parties to the same. It is further shown that, at the sheriff's sale at which the plaintiffs bought the note, public notice was given of the defences set up in the answer, as existing against the payee, John G. Banks. Under these facts, the question that arises is, whether the defendant, by giving this notice of the equities existing between him and Banks, his vendor, thereby entitled himself to the privilege of setting them up in the present suit against the plaintiffs, when it is admitted that he could not have pleaded them against the bank, the previous holder. We are clearly of opinion that he acquired no such privilege. The sheriff's sale transferred to the plaintiffs all the right, title, and interest of the bank in this note, such as they existed. No announcement, or notice of the defendant's claim against the payee, could prevent the purchasers from being fully subrogated to all the rights of the defendants in execution, or could change, or vary those rights in the slightest degree. The plaintiffs knew that they were acquiring all the right and title of the previous holders against whom no equity existed; they had, therefore, nothing to do with, or to apprehend from the defendant's alleged equities against the payee of the note. If the bank, who as vendor was bound to guaranty the existence of this claim against the defendant, had been called in warranty by the plaintiffs, it

would have successfully maintained that, having received this note before maturity, without notice, for full value, and in the course of business, no total or partial failure of consideration between the antecedent parties could be pleaded against it. If this answer would have availed the bank, it surely must avail the plaintiffs, who have acquired all its rights against the maker. Civil Code, arts. 2598, 2616. Story, on Bills, § 188, in speaking of the protection extended by the rule of the commercial law to the *bona fide* holder, without notice of existing equities, says: " The same rule will apply, although the present holder has such notice, if he derives a title to the bill from a prior *bonà fide* holder for value ;" and we find the same doctrine laid down in Bailey on Bills, p. 550.

As to the alleged reversal of the judgment in favor of the United States, on which the attachment was based, it affects neither the title of the plaintiffs, nor the liability of the defendant. The plaintiffs were appointed receivers, by the consent of both parties in the suit, to collect the assets of the bank for account of the owners. If the judgment is void, and the United States are to refund to the bank, the money will be repaid to the latter by the plaintiffs, who are the agents of the United States.

*Judgment affirmed.*